Case 1:24-cv-00123   Document 18   Filed on 07/21/25 in TXSD   Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
July 21, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DAVID M.,[1] | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:24-cv-123 |
| | § | |
| FRANK BISIGNANO,[2] | § | |
| *as Commissioner of Social Security,* | § | |
|     Defendant. | § | |

## REPORT AND RECOMMENDATION AFFIRMING COMMISSIONER'S DENIAL OF SOCIAL SECURITY BENENFITS

**I.   Synopsis**

David M. ("David") is a disabled veteran filing for disability benefits claiming an inability to work based on worsening conditions of his back, joints, and feet.  David, representing himself, appeals his denial of Social Security Disability Insurance ("SSDI") benefits by the Commissioner (the "Commissioner") of the Social Security Administration ("SSA").  David complains that the Administrative Law Judge ("ALJ") failed to properly evaluate medical evidence leading to inconsistent findings between his disability determination and his work capacity.  David also argues the ALJ improperly relied on vocational expert testimony when the ALJ determined that he was still eligible for work as a jailer.  The Court disagrees.  The Court finds that the ALJ examined the record, applied the correct legal standards, and properly supported their legal findings with substantial record evidence.  This Court recommends the ALJ's decision denying benefits be affirmed.

---

[1] Due to significant privacy concerns in social security cases and noting that judicial opinions are not subject to Federal Rule of Civil Procedure 5.2, any opinion, order, judgment, or other disposition in this case will refer to the claimant only by first name and last initial.

[2] Frank Bisignano is now the Commissioner of Social Security and should be substituted as Defendant, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

## II. Jurisdiction

This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner for claims arising under Title II of the Social Security Act, 42 U.S.C. § 421. Venue is appropriate because David resides in Cameron County, Texas. 42 U.S.C. § 405(g); 28 U.S.C. § 124(b)(6). Pursuant to 28 U.S.C. §636(b)(1), this case was referred to the undersigned United States Magistrate Judge to conduct all pretrial proceedings. Dkt. No. 5.

## III. Standard of Review

This Court's review of the Commissioner's decision is limited to determining whether the decision was supported by substantial evidence and whether the relevant legal standards were applied in reaching this decision. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). When applying the substantial evidence standard, it is not to "reweigh the evidence in the record, not try the issues de novo, nor substitute [its] judgment for that of the [Commissioner's]." *Johnson v. Bowen*, 864 F.2d 340, 343. "Conflicts within the evidence are not for the court to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The ALJ's decision must stand or fall on the rationale set forth in the ALJ's opinion. *Newton v. Apfel*, 209 F.3d 455, 458 (5th Cir. 2000). If the Commissioner's findings are supported by substantial evidence, the findings are conclusive and so must be affirmed. 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

## IV.     Disability Determination Process

Title II of the Social Security Act provides benefits to individuals with a disability. 42 U.S.C. § 423(d)(1)(A); *Heckler v. Campbell*, 461 U.S. 458, 459-61 (1983).  The Social Security Act defines disability as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.*

A claimant is not entitled to benefits under Titles II and XVI of the Social Security Act unless they are disabled as defined by the Act. 42 U.S.C. 423(d)(1)(A); *Heckler v. Campbell*, 461 U.S. at 459-61.  A claimant seeking Social Security benefits bears the burden of proving a disability as defined by the Social Security Act, 20 C.F.R. § 416.920(a)(4).  A claimant satisfies that burden, when he or she demonstrates a physical or mental impairment which lasts at least twelve months and precludes that person from pursuing any substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(ii).  Once the claimant proves disability as defined by the Social Security Act, the administrative law judge utilizes a five-step sequential process to determine whether the claimant can perform substantial gainful activity.  This five-step process is set forth in 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f).  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary as the person is entitled to benefits.  20 C.F.R. §§ 404.1520(a), 416.920(a).  The initial burden of proof lies with the claimant in the first four steps and the burden shifts to the Commissioner at the fifth step. *Bowling v. Shalala*, 36 F.3rd 431, 435 (5th Cir. 1994).  The steps are as follows:

1. At step one, the claimant must not be presently working at any substantial gainful activity, or work activity involving the use of significant physical or mental abilities for pay or profit.  20 C.F.R. §§ 404.1527, 416.972.
2. At step two, the claimant must have a severe impairment or a severe combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), cited in *Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000).

3. At step three, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. At step four, the impairment or impairments must prevent the claimant from returning to past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. At step five, if the claimant's impairment prevents past work, the ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if any other work can be performed. 20 C.F.R. § § 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999).

Residual functioning capacity ("RFC"), which is determined between the third and fourth steps, "is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Irby v. Barnhart*, 180 Fed. App'x 491, 493 (5th Cir. 2006) (unpub.) (citing Social Security Ruling ("SSR") 96-8p).[3]

The ALJ uses a two-part determination when considering the claimant's residual functioning capacity.

    a. The first part determines whether the claimant suffers from a medically determinable impairment "reasonably capable of producing" the claimed symptoms. *Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Oct. 25, 2017). Claimed symptoms "will not be found to affect [one's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(b).

---

[3] "The Social Security Administration's rulings are not binding on this court, but they may be consulted when the statute at issue provides little guidance. The Fifth Circuit has frequently relied upon the rulings in evaluating ALJ's decisions." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).

    b. In second part of the inquiry, the ALJ evaluates the intensity, persistence, and limiting effects of the individual's symptoms on a person's ability to do basic work activities. SSR 16-3p (S.S.A Oct. 25, 2017). In performing this evaluation, the ALJ considers the following matters: objective medical evidence; the claimant's testimony; the claimant's daily activities; the location, duration, frequency, and intensity of the individual's symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes. *Id.* In addition to medication, the ALJ also considers other treatment the individual receives for relief of pain or other symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c). Lastly, the ALJ also considers any other factors relating to the claimant's functional limitations and restrictions resulting from pain or other symptoms. *Id.*

## V. Background

### a. Administrative Procedural History

David filed an application for SSDI benefits under Title II of the Social Security Act on October 20, 2022, alleging a disability onset date of April 1, 2020. Dkt. No. 12, pp. 193-194.[4] This filing included David's United States Department of Veteran's Affairs disability rating. Dkt. No. 12, p. 195. David worked full-timehours until he filed for benefits which resulted in his disabiltiy onset date being adjusted to the date of his application, September 26, 2022. Dkt. No. 12, pp. 196-197. David's claim was initially denied on May 31, 2023, and likewise denied upon reconsideration on August 28, 2023. Dkt. No. 12, pp. 110, 116. On January 23, 2024, the ALJ held a hearing during which David appeared *pro se* despite being advised of his right to legal representation under the Equal Access to Justice Act. Dkt. No. 12, pp. 51-91 (Hearing Transcript). At the hearing

---

[4] The citation to the record refers to the Bates-stamped number on each record page.

before the ALJ, a vocational expert ("VE") testified as to the availability of jobs in the national economy for an individual with David's age, education, work experience, and residual functional capacity. *Id.* at 80-86.

Ultimately, the ALJ found David was not disabled under the meaning recognized by the Social Security Act. Dkt. No. 12, pp. 12-21. David filed an appeal of the ALJ's decision with the Appeals Council. Dkt. No. 12, pp. 1-7. The Appeals Council denied further review and found no regulatory reason to review the ALJ's decision. *Id.* Accordingly, David has exhausted all available administrative remedies, and his case is ripe for judicial review.[5] On August 19, 2024, David, still proceeding *pro se*, initiated this action challenging his denial of benefits pursuant to 42 U.S.C. § 405(g), seeking to reverse the negative determination of the commissioner. Dkt. No. 1. David also filed to proceed *in forma pauperis* which was granted by this Court. Dkt. No. 7.

**b. Factual History**

David was 43 years-old when he filed for social security benefits, claiming his chronic, disabling conditions prevented him from continuing employment. Dkt. No. 12, p. 193. At the time of filing, David claimed he was disabled since April 1, 2020. *Id.* However, he was still working until the date of his application so, his request was amended to reflect a disability onset date of September 26, 2022. Dkt No. 12, pp. 60, 193, 196, 246. David asserts he is disabled because of: (1) herniated discs in his lower back, (2) bad shoulders, (3) bad knees, and (4) bad ankles. Dkt. No. 12, pp. 66, 246, 263-270. Additionally, David claims issues with his vision and hearing. Dkt. No. 12, pp. 15, 263-270. His employment history reflects approximately fifteen years working as a security officer. Dkt. No. 12, pp. 14, 247, 255-262. David states he stopped working, because his listed conditions require frequent rest periods to complete basic tasks. Dkt. No. 1, pp. 10; Dkt. No. 12, p. 247.

---

[5] When the Appeals Council declines review of the Administrative Law Judge's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005).

### c. Hearing Testimony

As a preliminary note, David never retained independent counsel to represent him in these claims. Consequently, all testimony elicited from him at the oral hearing is a result of questions posed by the ALJ. In his hearing before the ALJ, David testified to experiencing physical impairments related to herniated discs in his lower back, cartilage degeneration in his knees, and general osteoarthritis. Dkt. No. 12, pp. 65-68. David described the need for medication and physically therapy to manage pain related to impairments in his lower extremities. Dkt. No. 12, pp. 69-71. When asked to describe his ability to walk without assistance, David testified that, "on a good day I can stand for about 15 to an hour. On a real bad day when it's bothering me, then I just can stand like 20 minutes … walking, the same thing." Dkt. No. 12, pp. 71-72. He was also asked to describe the impact of his limitations on routine activities of daily living. In response, David detailed that he could take complete some routine activity like bathing and dressing himself but must move "at [his] own rate," completing "just the basics" which he limits to light effort activities. Dkt. No. 12, pp. 71-74. Regarding, his most recent employment, David testified that his last full-time employment was a security officer for the same employer lasting for approximately 15 or 16 years and ending in September 2022 when he transitioned to part-time employment photographing various locations for insurance companies. Dkt. No. 12, p. 62-63.

In addition to David's testimony, the ALJ also elicited testimony from a vocational expert, Iric Saldivar, who both reviewed David's submitted evidence and heard David's oral testimony which immediately preceded his own testimony. Dkt. No. 12, pp. 80-86. VE Saldivar assessed David's prior work history and found his prior experience as a "security officer" most closely resembled the standardized description of a "jailer" contained within the Dictionary of Occupational Titles ("DOT"). Dkt. No. 12, p. 81. VE Saldivar answered hypothetical questions about limitations on an individual of David's age, education, and work experience. *Id.* VE Saldivar assessed that the "jailer" position is categorized as a "light, semi-skilled" position with an "SVP [specific vocational preparation] level of 4". *Id.* However, the position David described was performed at a

"medium work" level. *Id.* Based on questions posed by David and applying the hypothetical limitations proposed by the ALJ, VE Saldivar testified that, "whether [the jailer position] is performed at medium or not, [David] could still return to the job. So, I can say that it's technically performed at a medium exertion based on the hypothetical person in the hypothetical provided." Dkt. No. 12, pp. 84-85. As alternative employment to the jailer position, VE Saldivar determined that David could find employment as a hospital cleaner, laundry worker, and meat clerk. *Id.* at 85.

### d. Medical Evidence Reviewed

As a part of the disability determination process, state agency consultants, Drs. Nicol and Reddy, reviewed David's medical records which included treatment plans and disability ratings assessed by the Veterans Affairs Administration. Dkt. No. 12, pp. 92-101; Dkt No. 12, pp. 103-109. Dr. Nicol limited David's functional capacity to a medium exertion level, and this finding was not contradicted by the Dr. Reddy on reconsideration of David's application. Dkt. No. 12, pp. 99. Considering David's physical abilities, the ALJ found the opinions of both consulting doctors persuasive, because the "findings are consistent with the evidence as a whole, which captures uniformly normal observations of gait, strength, and range of motion despite evidence of degenerative changes in [David's] spine and extremities." Dkt. No. 12, p. 19. In addition to the traditional medical record evidence submitted by David, the state agency consultants reviewed a consultative examination performed by Dr. Dionisio Calvo, III, and authorized by Texas Disability Determination Services. Dkt. No. 12, pp. 439-463. Dr. Calvo's physical examination and limited medical record review resulted in a functional capacity described as "no restrictions" in the domains of sitting, lifting, carrying objects, hearing, speaking, standing, walking, and traveling. Dkt. No. 12, p. 446. However, Dr. Calvo did note that David has a diagnostic impression matching the symptoms of polyarthralgia, polymyalgia, and Type 2 diabetes mellitus. Dkt. No. 12, p. 446. The ALJ found Dr. Calvo's assessment unpersuasive, finding it did not adequately address David's complaints and evidence. Dkt. No. 12, p. 19.

The ALJ determined that David could perform the demands of medium exertion even in light of his chronic conditions. Dkt. No. 12, p. 19. To address David's complaint of shoulder pain, the ALJ found David is "limited to frequent reaching with the bilateral extremities." *Id.*

## VI. Commissioner's Decision

Using the Social Security Administration's established five-step sequential evaluation process for determining whether an individual is disabled under 20 C.F.R. §404.1520(a), the ALJ determined David was not disabled. Dkt. No. 12, p. 21.

At step one, the ALJ found David met the insured status requirements of the Social Security Act through December 31, 2017. Dkt. No. 12, p. 14. The ALJ determined that, to the extent David initially alleged an onset disability date of April 1, 2020, David had engaged in substantial gainful activity between his alleged onset date of April 1, 2020, and September 26, 2022, working as a security officer. Dkt. No. 12, p. 15. The ALJ also determined that though some earnings were documented in the first quarter of 2023, the earnings did not rise to the level of substantial gainful activity, and ultimately, David had not engaged in substantial gainful activity since September of 2022. *Id.*

At step two, the ALJ noted the following severe impairments: degenerative disc disease, degenerative joint disease, osteoarthritis, heel spurs, and obesity. (20 C.F.R. 404.1520). Dkt. No. 12, p. 15.

At step three, the ALJ found David's impairments, considered singly or jointly, do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526). Dkt. No. 12, p. 16.

At step four, the ALJ found David can perform past relevant work as a jailer, and this work does not require the performance of work-related activities precluded by his residual functional capacity. Dkt. No. 12, pp. 19-20.

At step five, the ALJ continued their inquiry to determine if jobs, other than David's previous "jailer" position, are available in the national economy for David to perform based on his RFC limitations. The ALJ found Davids's RFC allows him to perform medium

work as defined in 20 C.F.R. 404.1567(c) except that he can frequently reach with the bilateral upper extremities. Dkt. No. 12, p. 16. More specifically, the ALJ found that David's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [David's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence or other evidence in the record." Dkt. No. 12, p. 17.

At step five, the ALJ relied on vocational expert testimony to determine the type and level of work available to a person of a with an RFC equivalent to David's assessed RFC. Dkt. No. 12, pp. 18-20. The VE applied the RFC limitations to jobs available in the national economy and determined that an individual with David's assessed RFC would be able to perform work as a hospital cleaner, laundry worker, or meat clerk. Dkt. No. 12, p. 21. After consideration of this VE testimony and record, the ALJ found David can make a successful adjustment to other work that exists in the national economy and concludes he is not disabled. Dkt. No. 12, p. 19.

## VII.  Analysis

On appeal is whether the ALJ applied the relevant legal standards and whether substantial evidence supports the ALJ's findings. Dkt. No. 15. David alleges that (1) the ALJ "missed MRI and disability from The Department of Veterans Affairs", (2) the ALJ's assessment concerning the weight given to the opinions of his treating physicians at the Department of Veteran's Affairs was inappropriate, (3) "the ALJ erroneously concluded [his] job classification was inaccurate according to the expert", and (4) the ALJ improperly relied on the vocational expert who failed to consider his limitations on his ability to work.[6] Dkt. No. 15, pp. 3-4. In response, the Commissioner argues the ALJ applied the correct legal standards and that a review of the ALJ's opinion "reveals a thorough consideration of the medical evidence and an appropriate assessment of David's impairments and RFC." Dkt. No. 16, p. 9.

---

[6]To the extent that David argues magnetic resonance imaging ("MRI") evidence was not properly considered (Dkt. No. 15, p. 4.), the Court directs his attention page 18 of the ALJ opinion which specifically references consideration of MRI evidence. Dkt. No. 12, p. 18.

The Court finds substantial evidence supports the ALJ's determination that David is not disabled within the meaning of the Social Security Act. The ALJ applied the relevant legal standards supported by substantial evidence that David can perform the requirements of medium work when reduced by the noted and discussed limitations.

The ALJ properly omitted any analysis about disability, employment, and benefit decisions made by the United States Department of Veteran Affairs (the "VA"). *See* 20 C.F.R. §404. 1504 (stating that for claims filed on or after March 27, 2017, the Social Security Administration will consider the supporting evidence underlying another governmental agency's entitlement determination but will provide no analysis of that agency's determination). The ALJ did consider David's supporting evidence from the VA. *See* Dkt. No. 12, pp. 15-19 (ALJ citations to Exhibits submitted by and from the VA).

The ALJ properly considered the persuasiveness of medical opinions and articulated the reasons for determining the persuasiveness of each opinion. The ALJ also properly relied upon the opinion of the vocational expert to determine that jobs, including jobs as a jailer, exist in significant numbers in the national economy and that David can perform them even when considering his age, education, work experience, and residual functional capacity.

An ALJ is required to consider the persuasiveness of medical opinions. 20 C.F.R. § 404.1520c(b). In determining the persuasiveness of the medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) the source's relationship with the claimant, (4) the source's specialty, and (5) any other factors including the source's familiarity with other evidence in the claim and whether the source considered new evidence received after the source made the medical opinion. 20 C.F.R. § 404.1520c(c). The most important factors in evaluating persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). An ALJ is required to explain how they considered the supportability and consistency factors for a medical source opinion. *Id.*

Ultimately, the ALJ found David's objective medical evidence inconsistent with his testimony at the hearing. The ALJ relied on David's objective medical evidence and

opinions to determine assess David's disability status. To further develop the record evidence, the ALJ sent David for an examination with Dionisio Calvo, III, M.D. in May of 2023. Dkt. No. 12, pp. 441-460. At this examination, David reported back and knee pain on a typical day being at a level of six or seven out of ten (with ten being the most severe pain). *Id.* at 441. Dr. Calvo opined that David had no restrictions on sitting, standing, walking, lifting, carrying objects, speaking, hearing, or traveling. *Id.* at 446. In his briefings before the Court, David argues that these "medical exams were inaccurate" and "the x rays requested were done on the wrong knee and they did not conduct x rays on my back." Dkt. No. 15, p. 3. However, the ALJ found Dr. Calvo's general opinion unpersuasive. Dkt. No. 12, p. 19. The ALJ noted that Dr. Calvo's opinion did draw some support from his observations of normal motor functioning— gait, strength, and range of motion—despite indications of poor effort, but te ALJ found that Dr. Calvo's assessment did not adequately address David's ongoing pain symptoms with evidence of degenerative changes and abnormalities in David's lumbar spine and in several joints. *Id.* An ALJ is not required to explicitly set forth every reason for rejecting a particular opinion, and the ALJ may reject any opinion not supported by medical evidence or inconsistent with the record. *See Bradley v. Bowen,* 809 F.2d 1054, 1057 (5th Cir.1987); *see also* 20 C.F.R. § 404.1527 ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give that medical opinion"). In making the determination that Dr. Calvo's opinion was unpersuasive, the ALJ cited to various exhibits documenting some evidence of deterioration of David's function given his chronic conditions. It is the ALJ's task to examine the specific opinion in the context of the record. Evidence exists to support some level of restriction given David's medical history and current symptoms, so the ALJ properly supported his lack of reliance on Dr. Calvo's assessment. Therefore, to the extent that David argues this medical opinion was improperly considered, the Court finds the opinion of Dr. Calvo was properly considered and found unpersuasive by the ALJ.

To determine David's RFC, the ALJ properly relied on and found persuasive, the review of David's records by the Drs. Patricia Nicol and Kavitha Reddy. The review included David's records from the VA. Based on their review, Drs. Nicol and Reddy

concluded that David was limited to performing the demands of medium work with the limitation of frequent reaching with both shoulders. Dkt. No. 12, pp. 19, 96-98, 106-108. David's residual functional capacity was modified to reflect the limitations recommend by the reviewing doctors.

David complains the ALJ failed to give appropriate weight to the opinion of his treating physicians and claims those opinions are consistent with his medical records. Dkt. 15, p. 3. This Court has determined that the ALJ properly considered the persuasiveness factors of the medical experts who reviewed David's treating physician records. As noted above, ALJ is required to consider five factors, including supportability, consistency, the source's relation with the patient, the source's specialty, and any other factors that tend to support or contradict the medical opinion. 20. C.F.R. § 404.1520c(c). After the application of the new regulations in 2017, ALJs are no longer required to give controlling weight to the opinions of treating physicians. *See* 20 C.F.R. § 419.920c(a). The ALJ found both Dr. Nicol and Dr. Reddy's opinions persuasive, because they placed limitations on David's ability to work and were made with at least some a review of David's treatment at the VA. Dkt. No. 12, p. 19. Additionally, the ALJ reviewed David's general medical records and compared his complaints at the hearing to his complaints at medical visits, finding that the medical records, which VA medical evidence, indicate David's complaints are not a limiting as he alleges. The ALJ thoroughly onsidered David's VA records in finding he can perform work of medium exertion. Therefore, contrary to David's complaint, the ALJ did properly consider the evidence of the VA doctors and found the medical evidence supported the idea that David is able to work. 12, p. 19.

To determine the type of work available to David in the national economy, the ALJ relied upon vocational expert testimony. Dkt. No. 12, pp. 19-21. The VE classified David's past work as that of a "jailer" as listed in the Dictionary of Occupational ("DOT") Titles (Code 372.367-014, Specific Vocational Preparation 4, semi-skilled, light exertion) Dkt. No. 12, p. 81. Both at the hearing and now, David argued the VE's classification was inaccurate, noting differences between "a security guard at Walmart and a corrections officer inside a federal facility taking care of 75 bodies." Dkt. No. 12, p. 24; Dkt. No. 15,

p. 3. However, the VE accurately performed their task to review David's *descriptions* of his job duties to find the title of the job title in the DOT which most closely aligns with the *duties* assigned to that title. Dkt. No. 12, pp. 83-85. After being specifically advised of the VE's role and task, David did not raise further objections before the ALJ. To the extent that there is a conflict between the VE's testimony, and the title assigned in the DOT in this case, the ALJ may rely upon the VE's testimony when the record reflects the duties are aligned. As the Fifth Circuit Court of Appeals has previously held, "claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error." *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). The ALJ also relied on David's own documented evidence of previous employment which reflects David's employment a guard with Asset Protection and Security Services until he filed for disability insurance benefits. Dkt. No. 12, p. 255.

David complains the ALJ relied on the vocational expert's testimony that failed to consider his work limitations. The record contradicts this complainant. At David's hearing, the ALJ asked the VE to consider David for medium work with frequent bilateral reach. Dkt. 12, p. 81. After the VE testified that limitation would include his prior work as a jailer, the ALJ went one step further for David and requested the VE consider other jobs in the market with the same medium work with frequent bilateral reach. *Id.* The VE found other jobs in the market David could perform with this limitation. Dkt. 12, p. 85. Accordingly, the ALJ properly relied on substantial record evidence through VE testimony to make the determination that past relevant work remains available and current other jobs in the national economy are available to David.

## VIII. Recommendation

This Court finds the ALJ's denial of social security benefits to David is supported by substantial evidence using relevant legal standards. The ALJ properly determined David is not disabled and capable of finding jobs in the current economy. The Court **RECOMMENDS** the final decision of the Social Security Administration denying benefits be **AFFIRMED**.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with United States District Judge Fernando Rodriguez, Jr. 28 U.S.C. § 636(b)(1). When filing an objection, a party must object to specific facts or legal findings in this Report and Recommendation. The District Judge is not required to consider frivolous, conclusive, or general objections. *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a *de novo* review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a *de novo* review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017).

Signed on July 21, 2025.

Karen Betancourt
United States Magistrate Judge